UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PHONG THANH NGUYEN, <br><br> Petitioner, <br><br> v. <br><br> BRUCE SCOTT, Warden, Northwest ICE Processing Center; DREW BOSTOCK, Enforcement and Removal Operations, Seattle Field Office Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security;, <br><br> Respondents. | Case No. 2:25-cv-01398 <br><br> ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER |

## I.   INTRODUCTION

Petitioner Phong Thanh Nguyen seeks emergency relief from this Court to obtain his release from immigration detention and prevent his deportation to an unknown third country. *See* Dkt. 2-1. Petitioner is a refugee of Vietnam who fled to the United States as a child in 1975 and became a legal permanent resident ("LPR") in 1978. After Petitioner was convicted of assault in 1999, an Immigration Judge ("IJ") ordered his removal to Vietnam. But because Vietnam refused to repatriate its citizens if they had left the country before 1995, Petitioner's deportation was never carried out. After the Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678 (2001),

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 1

that the Immigration and Nationality Act ("INA") does not allow indefinite detention of non-citizens with removal orders, Petitioner was released from custody on orders of supervision. On July 16, 2025, Immigration and Customs Enforcement ("ICE") detained Petitioner at a routine check-in. ICE claims that Petitioner's removal to Vietnam is now reasonably foreseeable, justifying his detention.

On July 24, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for a temporary restraining order ("TRO"). Dkt. 1; Dkt. 2-1. Petitioner asks the Court to order his release from detention and to prohibit his removal to a country other than Vietnam without sufficient due process. *See id.* The next day, after concluding that Petitioner had at least raised serious questions about the legality of his detention and faced a threat of severe irreparable harm, the Court entered an ex parte order prohibiting his removal to a third country pending a full hearing on the TRO motion. Dkt. 8.

Respondents Cammilla Wamsley[1], Kristi Noem, and the Department of Homeland Security (DHS) opposed the motion on July 26, 2025 and submitted a supplemental declaration in support of their opposition on July 29.[2] Dkt. 13, 14, 17, 18. Respondents maintain that they do not intend—at this time—to remove Petitioner to a country other than Vietnam, that Petitioner is unlikely to succeed on the merits because there is now a significant likelihood he will be removed to Vietnam, and that Petitioner's request for release from custody should not be granted on an expedited basis without full briefing. *See* Dkt. 13. The Court held a hearing on July 29, 2025. At the hearing, Respondents did not oppose continuing the Court's temporary order

---

[1] Respondent Cammilla Wamsley, the Seattle Field Office Director for ICE Enforcement and Removal Operations, is substituted for Drew Bostock. *See* Dkt. 13 at 1 n.1; Fed. R. Civ. P. 25(d).

[2] Respondent Bruce Scott, the warden of the facility where Petitioner is detained, is not represented by the United States and has not responded to the motion. *See* Dkt. 13 at 1 n.2. The record reflects that Petitioner's counsel has tried to serve Mr. Scott without success. Dkt. 12.

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 2

barring the Government from removing Petitioner to a third country pending a preliminary injunction hearing. Respondents did, however, urge the Court to deny Petitioner's request for release from detention pending consideration of full briefing in advance of that hearing.

The Court therefore GRANTS Petitioner's motion in part and RESTRAINS Respondents from removing Petitioner to a country other than Vietnam as set forth in the conclusion of this Order. The Court agrees with Respondents, however, that Petitioner's request for release from custody should not be decided in the context of a TRO motion. The Court therefore DENIES Petitioner's motion to the extent it seeks his immediate release from detention. Petitioner may seek this relief through his preliminary injunction motion on the parties' agreed schedule or through the regular adjudication of his habeas petition.

## II. BACKGROUND

### A. Petitioner's Re-Detention

Petitioner Phong Thanh Nguyen was born on June 6, 1970, in Vietnam. Dkt. 1 ¶ 16. Petitioner arrived with his family in the United States on July 25, 1975, as refugees from the Vietnam War. *Id.* Petitioner and his family settled in the Seattle area, where he has lived ever since. *Id.* ¶ 18. Petitioner currently lives with his elderly parents, both U.S. citizens, whom he helps to care for. Dkt. 2-15 ¶ 10. Petitioner is also a caregiver for his adult daughter, who has a rare genetic disorder, Prader-Willi Syndrome. Dkt. 2-13 ¶¶ 2, 4, 8.

Petitioner obtained permanent resident status in 1978. Dkt. 1 ¶ 16. He works as a warehouse attendant at Best Plumbing in Seattle, where he has been employed for the past sixteen years. Dkt. 2-15 ¶ 11.

On December 20, 1999, Petitioner was convicted of second-degree assault for hitting another man with a pool cue during a bar fight. Dkt. 2-4 at 2. After he was released from prison in July 2000, he was taken into custody by immigration officials. Dkt. 1 ¶ 23. He was charged

with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. Dkt. 2-6 at 2. An IJ ordered that Petitioner be removed from the United States on October 4, 2000. Dkt. 2-15 ¶ 3; Dkt. 1 ¶ 24. But, as explained further below, *infra* Sec. II.B., Vietnam refused to accept him. Dkt. 2-15 ¶ 3; Dkt. 1 ¶ 25. After six months in immigration detention, Petitioner filed a petition for writ of habeas corpus in this Court seeking release from custody. *See* Dkt. 2-5 at 2. In September 2001, U.S. District Judge Marsha J. Pechman ordered his release. *Id.* at 2, 9–10.

A few years later, Petitioner was convicted of unlawful possession of a weapon and harassment. Dkt. 2-6 at 2. On August 26, 2003, he again was taken into custody by immigration officials. *Id.* But because Vietnam still refused to accept him, he was released in January 2004 under an order of supervision. *See* Dkt. 1 ¶¶ 25, 27; *see* Dkt. 2-9 at 5. He has complied with his terms of the supervision for more than two decades since his release. Dkt. 2-15 ¶ 4.

One term of Petitioner's supervision was to appear for regular check-ins with ICE. Dkt. 2-9 at 2. When Petitioner attended his check-in in June 2025, an ICE officer requested that he complete paperwork and return it to the office on July 15. Dkt. 2-15 ¶¶ 4–5; Dkt. 1 ¶ 30. The paperwork was a self-declaration form for Vietnam. *See* Dkt. 2-10 (Petitioner's completed form); Dkt. 2-8 (general form accompanying agreement between Vietnam and United States). Petitioner offers evidence that Vietnam requires this form to process an ICE request for repatriation before issuing a travel document. Dkt. 2-1 at 9; *see* Dkt. 2-10. When he returned the completed form to ICE, an officer told Petitioner to return the following day with two passport photos. Dkt. 2-15 ¶¶ 5–6.

Petitioner asked why the photos were required. Dkt. 2-2 ¶ 10. The ICE officer responded that the photos were to be sent to the Vietnamese Embassy to determine whether Petitioner was

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 4

deportable. *Id.* Petitioner asked the ICE officer if he was deportable, to which the officer responded that "it's starting to open up." *Id.*

Again, Petitioner complied and returned to the office on July 16, 2025. Dkt. 2-15 ¶ 7. ICE prevented Petitioner's family or coworker from attending the meeting with him. *Id.* ¶¶ 7–8. Petitioner was detained and transferred to the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC"). *Id.* ¶ 8. Petitioner was provided with a letter dated July 16, 2025 from Matthew M. Cantrell, Acting Deputy Field Office Director, stating that his release was revoked. Dkt. 13-1 at 2–3. The notice stated that his order of supervision had been revoked and he would be detained "based on a review of your official [noncitizen][3] file and a determination that there are changed circumstances in your case." *Id.* at 2. The notice explained, "ICE has determined that you can be removed from the United States pursuant to the outstanding order of removal against you. On October 4, 2000, you were ordered removed to Vietnam by an authorized U.S. DHS/DOJ official and you are subject to an administratively final order of removal. Your case is under current review by the Government of Vietnam for the issuance of a travel document." *Id.*[4]

Petitioner filed his habeas petition on July 24, 2025, asserting several claims for relief. Dkt. 1. First, he claims that his re-detention is unlawful under the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act ("INA") and related regulations, and the Administrative Procedure Act ("APA"). *Id.* ¶ 73. He offers evidence that removal is not "reasonably foreseeable," and thus detention is "unreasonable and no longer authorized by

---

[3] This order uses the term "noncitizen" as equivalent to the statutory term "alien." *Nasrallah v. Barr*, 590 U.S. 573, 578, n. 2; *see* 8 U.S.C. § 1101(a)(3).

[4] At the TRO hearing, counsel for Respondents conceded that the statement that Petitioner's case "is under current review by the Government of Vietnam for the issuance of a travel document" was incorrect and an amended notice would be provided.

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 5

statute." *Id.* ¶ 74 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 699–70 (2001)). For reasons explained further below, he argues that repatriation to Vietnam is highly unlikely. *Id.* ¶ 77. He also offers evidence that Respondents "violated governing regulations for revoking" his conditions of release, which lay out "several [mandated] procedural steps[.]" *Id.* ¶ 76.[5]

Petitioner also claims that he faces a threat of removal without notice to a third country, rather than to Vietnam, and that such removal would violate the Fifth Amendment, the INA, the Convention Against Torture ("CAT") and implementing regulations, and the APA. *Id.* ¶ 79. Each of these laws "mandate meaningful notice and opportunity to respond to any attempt to remove Petitioner to a third country in reopened removal proceedings." *Id.*

Lastly, Petitioner argues that deporting him to a third country to face imprisonment upon arrival would constitute impermissible punishment for a civil immigration violation, prohibited by both the Fifth and Eighth Amendments. *Id.* ¶¶ 82–84.

Petitioner filed his habeas petition, Dkt. 1, concurrent with a motion for a TRO, Dkt. 2-1, and accompanying affidavits and exhibits. Dkt. 2-2–Dkt. 2-15. The next day, the Court issued an ex parte order finding that Petitioner had raised serious questions on the merits and ordering Respondents not to remove him to a third country. Dkt. 8.

Respondents submitted their opposition on July 26. Dkt. 13. The Court held a hearing on July 29. Dkt. 15. At the hearing, Respondents agreed not to oppose the Court's temporary order prohibiting third country removal pending a preliminary injunction hearing. Respondents reiterated their request for more time to fully brief the issues and offer additional evidence to

---

[5] Petitioner also explains that he intends to move to reopen his immigration court proceedings because he is no longer removable as charged on his Notice to Appear. Dkt. 1 ¶ 70–71. He explains that "[s]ince he was ordered removed, the Ninth Circuit has clarified that the conviction for which he was ordered removed, assault in the second degree, is not an aggravated felony." *Id.* (first citing *United States v. Robinson*, 869 F.3d 933 (9th Cir. 2017); and then citing *United States v. Door*, 917 F.3d 1146 (9th Cir. 2019)).

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 6

show there is a significant likelihood that Petitioner will be deported to Vietnam in the reasonably foreseeable future.

B.    **Deportation of Vietnam War Refugees**

After the Vietnam War, many Vietnamese people "fled the country to escape political persecution." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020). The United States accepted many Vietnamese refugees, including Petitioner. *See id.*; Dkt. 1 ¶ 16. Until 2008, Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. *Trinh*, 466 F. Supp. 3d at 1083. In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. *Id.* This meant that Vietnamese immigrants who had arrived before that date would not be considered for repatriation. *Id.*

Until 2017, ICE "maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." *Id.* Thus, ICE typically detained pre-1995 Vietnamese immigrants for no more than ninety days after their removal orders became final. *Id.* After that time expired, most detainees were released on orders of supervision. *Id.*

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement. *Id.* Though the 2008 agreement was not formally amended, Vietnamese officials "verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them." *Id.*

In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. *Id.* at 1083–84. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. *Id.* at 1084. ICE also began re-detaining some individuals who had been released on orders of supervision. *Id.*

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 7

But this policy did not last long. *Id.* In 2018, following additional meetings between the United States and Vietnamese officials, "ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely." *Id.* ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal. *Id.*

In 2020 the policy changed again. That November, the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. *See generally* Dkt. 2-8. Under Section 4 of the MOU, Vietnam affirmed that it "intends to issue travel documents where needed, and otherwise to accept the removal of an individual subject to a final order of removal from the United States" if the individual meets four conditions. *Id.* at 3–4. First, the individual must have Vietnamese citizenship (and only Vietnamese citizenship). *Id.* at 3. Second, the individual must have violated U.S. law, been ordered removed by a U.S. authority, and completed any sentence of imprisonment. *Id.* Third, the individual must have resided in Vietnam prior to arriving in the United States and have no right to reside in any other country or territory. *Id.* at 4. The fourth condition has been redacted from the publicly disclosed version of the MOU filed by Petitioner, and Respondents have not offered any explanation of what it is. *See id.* Petitioner has offered evidence that from September 2021 through September 2023, the United States deported and repatriated only four pre-1995 immigrants to Vietnam. Dkt. 1 ¶ 41; Dkt. 2-2 ¶ 11.

In support of its opposition, ICE submitted a declaration from Jamie Burns, Acting Assistant Field Office Director at the Office of Enforcement and Removal Operations ("ERO") in Tacoma, Washington. Dkt. 14 ¶ 1. Burns explained that on June 18, 2025, the regional ERO office contacted ERO Headquarters Removal and International Operations ("RIO") "to inquire if

there is a significant likelihood that Petitioner could be removed in the reasonably foreseeable future." *Id.* ¶ 12. The same day, the relevant ERO unit "advised that there is currently a significant likelihood for removal in the reasonably foreseeable future . . . as to all Vietnamese citizens, regardless of date of entry; that the Government of Vietnam has been issuing travel documents to such [noncitizens] in less than 30 days; and that a charter flight for removals to Vietnam would be scheduled soon." *Id.* ¶ 13. Burns attested that based on "recent experience," Burns has observed Vietnam issuing travel documents to Vietnamese citizens who entered the United States before 1995. *Id.* ¶ 14.

Burns concluded that Petitioner's order of release was "revoked because ICE has determined that Petitioner can be removed on the outstanding order of removal against him and his case is currently under review by the Government of Vietnam for issuance of a travel document." *Id.* ¶ 16.[6] And ICE thus "anticipates that a travel document will be issued and Petitioner will be removed to Vietnam shortly thereafter." *Id.* ¶ 17.

Respondents also submitted a declaration from Jessie Gonzalez, Detention and Deportation Officer for the Removal Management Division ("RMD") Removal and International Operations ("RIO") Unit that covers Vietnam. Dkt. 18-1 ¶¶ 1, 3. Gonzalez states that "Vietnam has agreed to increase cooperation with the United States and issue travel documents in less than 30 days." *Id.* ¶ 6. And, Gonzalez explains, "[a]s of July 25, 2025, ICE has removed 368 final order Vietnamese citizens to Vietnam in Fiscal Year 2025[.]" *Id.* ¶ 7. Further, in Fiscal Year 2025, "ICE has requested travel documents in 301 cases involving Vietnamese citizens. In 225

---

[6] As noted previously, Respondents conceded at the TRO hearing that the statement that Petitioner's "case is currently under review by the Government of Vietnam for issuance of a travel document" is incorrect.

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 9

cases, ICE obtained the necessary travel documents from the Government of Vietnam. Of those 225 cases, 154 entered the United States before July 12, 1995." *Id.* ¶ 8.

### III.  LEGAL STANDARD

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the standard for a TRO is "substantially identical" to the standard for a preliminary injunction). TROs serve a limited purpose: "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Loc. No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

A plaintiff seeking a TRO must show: (1) they are likely to succeed on the merits, (2) the potential for irreparable harm absent preliminary relief, (3) the balance of equities favors injunction, and (4) the relief sought is in the public interest. *Winter*, 555 U.S. at 20; *Stuhlbarg*, 240 F.3d at 839 n.7. The movant must make a showing on each element of the *Winter* test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). However, "where the 'balance of hardships . . . tips sharply towards the plaintiff,' a plaintiff need only show 'serious questions going to the merits,' rather than likelihood of success on the merits[.]" *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (quoting *All. for the Wild Rockies*, 632 F.3d at 1135). Still, the moving party bears the burden of persuasion and must make a clear showing that he is entitled to such relief. *Winter*, 555 U.S. at 22.

Although individual appellate panels have questioned the usefulness of the distinction, the Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions

go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting *Meghrig v. KFC W., Inc.,* 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id.* (quoting *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### IV.    DISCUSSION

#### A.    Forms of Relief Requested

To start, the Court must consider whether the relief requested demands a prohibitory or mandatory injunction. *See Hernandez*, 872 F.3d at 997–99. Petitioner requests that the Court issue a TRO "directing Respondents to release Petitioner from the [NWIPC] and to enjoin Respondents from removing or attempting to remove Petitioner to a third country in violation of the Constitution and statutory procedures pending the resolution of the Petition for Writ of Habeas Corpus." Dkt. 2 at 1. Petitioner thus requests both forms of injunctions. He seeks a prohibitory injunction to maintain the status quo by barring ICE from removing him to a third country. *Id.* Such an injunction is not disfavored, and the Court need not apply the heightened standard for a mandatory injunction to his request. *See Hernandez*, 872 F.3d at 999 (explaining that mandatory injunctions are subject to a higher standard than prohibitory injunctions).

Petitioner's request for release from detention, however, is generally considered a mandatory injunction. *See Betschart v. Oregon*, 103 F.4th 607, 619 (9th Cir. 2024) (determining

that injunction requiring release of certain criminal defendants was a mandatory injunction). To obtain a mandatory injunction, a plaintiff must "establish that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Betschart*, 103 F.4th at 619 (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)).

That said, several district courts have recently concluded that releasing from re-detention a noncitizen who had been on supervised release preserves the status quo. *Phong Phan v. Moises Becerra*, No. 2:25-CV-01757-DC-JDP, 2025 WL 1993735, at *6 (E.D. Cal. July 16, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *3 (N.D. Cal. Jul. 4, 2025) (finding the "moment prior to the Petitioner's likely illegal detention" was the status quo). The status quo *ante litem* is "the last uncontested status which preceded the pending controversy[.]" *GoTo.com, Inc. v. Walt Disney*, Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)); *see also Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("[T]he 'status quo' refers to the legally relevant relationship between the parties before the controversy arose.") (emphasis removed) (citing *McCormack v. Hiedeman*, 694 F.3d 1004, 1020 (9th Cir. 2012)).

Some courts have thus concluded that similarly situated petitioners "seek a prohibitory injunction because they seek to preserve the status quo preceding this litigation—their physical presence in the United States free from detention." *Domingo-Ros v. Archambeault*, No. 25-CV-1208-DMS-DEB, 2025 WL 1425558, at *2 (S.D. Cal. May 18, 2025); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *2 (E.D. Cal. Mar. 3, 2025) ("Petitioner had remained out of custody for over five years until his bond was suddenly revoked. It is questionable whether that status quo is properly considered to be detention when the Government suddenly took an allegedly unconstitutional action in rearresting Petitioner without a hearing. . . . [T]he Court here ultimately has no need to reach that issue. Instead, the Court

assumes without deciding that the injunctive relief requested does constitute a mandatory injunction.").

While the parties should be prepared to address this distinction at the preliminary injunction hearing, the Court need not determine at the TRO stage whether the requested relief is a mandatory or prohibitory injunction. "Although the standard for obtaining a [TRO] and a preliminary injunction is identical, they serve fundamentally different purposes." *All. for Wild Rockies v. Higgins*, 690 F. Supp. 3d 1177, 1185 (D. Idaho 2023). "The purpose of a [TRO] is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Id.* (first citing *W. Watersheds Project v. Bernhardt*, 391 F. Supp. 3d 1002, 1008-09 (D. Or. 2019) (internal quotation marks and citations omitted); and then citing *Arizona Recovery Hous. Ass'n v. Arizona Dep't of Health Servs.*, 462 F. Supp. 3d 990, 996 (D. Ariz. 2020)). TROs are thus "restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose*, 415 U.S. at 438–39. Preliminary injunctions, by contrast, remain in effect throughout the litigation. *Higgins,* 690 F. Supp. 3d at 1186. Thus, a TRO is not designed to replace the "thorough consideration contemplated by full proceedings pursuant to a preliminary injunction." *Id.* (quoting *Oby v. Clear Recon Corp.*, No. 216CV01008MCECKD, 2016 WL 3019455, at *1 (E.D. Cal. 2016)).

Because Petitioner's request for release from detention is the same relief ultimately sought by his habeas petition, the Court concludes that it falls outside the limited purpose of a TRO and should instead be decided either after a preliminary injunction hearing or through regular adjudication of the habeas petition itself. This conclusion is also supported by Respondents' request for additional time to present evidence to support Petitioner's detention and their agreement at oral argument to an expedited preliminary injunction schedule. While

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 13

there could be circumstances where a petitioner's detention is so obviously unconstitutional that release should be granted on an emergency basis, that is not the case here. As explained further below, although Petitioner has put forth significant evidence, he has not shown such an obvious entitlement to immediate release.

**B.     Analyzing the *Winter* Factors**

   *1.     Likelihood of Success on the Merits*

      *a)     Legality of Re-detention*

The Court turns first to what Petitioner has shown. Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1053 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 694 (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process"). The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

Petitioner is a noncitizen who has been present in the United States for fifty years. Dkt. 1 ¶ 1. He is entitled to the protections of the Due Process Clause. *See Zadvydas*, 533 U.S. at 693.

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 14

Having been detained already for a cumulative year and a half after an IJ ordered his removal, Dkt. 1 ¶ 1, Petitioner's continued detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. And Petitioner's evidence showing (1) the historically low number of removals to Vietnam for immigrants who arrived in the U.S. pre-1995, *see* Dkt. 2-2 ¶ 11, Dkt. 2-8, Dkt. 2-9; (2) the government's failure to deport him for over two decades, *see* Dkt. 2-6 at 2, Dkt. 1 ¶¶ 22, 24, 28–30; and (3) that the government likely detained him without securing a travel document from Vietnam, or even formally requesting one under the 2020 MOU, *see* Dkt. 2-15 ¶¶ 4– 9, Dkt 2-8, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. And Respondents have demonstrated that, with more time to prepare for a preliminary injunction hearing, they may be able to rebut Petitioner's evidence.

As evidence that ICE expects to remove Petitioner to Vietnam soon, Respondents offer a declaration from Jamie Burns, Acting Assistant Field Office Director at the ERO Office in Tacoma, Washington. Dkt. 14 ¶ 1. The declaration states that the relevant immigration authorities "advised that there is currently a significant likelihood for removal in the reasonably foreseeable future . . . as to all Vietnamese citizens, regardless of date of entry; that the Government of Vietnam has been issuing travel documents to such [noncitizens] in less than 30 days; and that a charter flight for removals to Vietnam would be scheduled soon." *Id.* ¶ 13. Burns also attests that "based on my recent experience, I have observed the government of Vietnam issue travel documents to Vietnamese nationals who entered the United States before July 12, 1995," *id.* ¶ 14, and concludes that "ICE anticipates that a travel document will be issued and Petitioner will be removed to Vietnam shortly thereafter," *id.* ¶ 17.

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 15

Respondents submitted a second declaration from Jessie Gonzalez, who oversees deportations for the region that encompasses Vietnam. *See generally* Dkt. 18-1. Gonzalez offered additional details, explaining that of the 301 cases in Fiscal Year 2025 for which ICE had to request a travel document to remove a Vietnamese citizen, 225 travel documents were obtained, and 154 of those were for pre-1995 Vietnamese immigrants. *Id.* ¶ 8.

As the Court discussed with the parties at the TRO hearing, while this evidence supports Respondents' argument that the Government of Vietnam is accepting repatriation of more citizens generally, it does little to establish the likelihood of Petitioner's removal in the absence of evidence about what steps Respondents have taken to deport him specifically. Burns's assertion that ICE "anticipates" a travel document being issued for Petitioner is conclusory, and even less persuasive after Respondent's counsel conceded that the underlying statement—that Petitioner's case was already under review by the Government of Vietnam—was incorrect.

At the hearing, the parties disputed whether ICE had begun its request for Petitioner's travel documents. *See* Dkt. 20. Counsel for Respondents maintained that the documents had not yet been filed because Petitioner refused to sign the necessary documents. Counsel for Petitioner represented that they had recently spoken with their client's deportation officer, who confirmed a travel document had not been requested but gave a different version of the events. Neither representation is supported by evidence in the Court's record. This factual dispute highlights the necessity of additional evidence before the Court can assess Petitioner's likelihood of success on the merits.

Respondents argued this point both in their briefing and in the hearing—maintaining they were given insufficient time to rebut Petitioner's contentions. Dkt. 13 at 8–10. They ask the Court to provide "a reasonable opportunity to gather and produce that evidence before the Court makes a determination on [Petitioner's] request for release." *Id.* at 9. And they note that the

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 16

briefing schedules in the cases that Petitioner cites did not require such a "highly truncated schedule." *Id.* at 10.

The Court agrees. For example, in *Phan v. Becerra*, the petitioner filed his motion for a TRO, a motion for a preliminary injunction, and his habeas petition on June 23, 2025. 2025 WL 1993735, at *1. The respondents filed their opposition on June 27, and the petitioner replied on June 28. *Id.* The court held a hearing on June 30. *Id.* The court denied the initial motion the same day. *Id.* at *2. An amended habeas petition and motion were filed on July 3 and July 9, respectively. *Id.* Respondents were given until July 15 to respond. *Id.*

Similarly, in *Hoac v. Becerra*, respondents were given a week to respond. No: 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *1 (E.D. Cal. July 16, 2025). Those motions that have demanded an expedited briefing schedule have sought to bar removal to a third country, rather than obtain release. *See, e.g.*, *Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 1771438, at *6 (N.D. Cal. June 26, 2025) (granting TRO to arrest, detainment, and third country removal without notice and hearing, but giving government opportunity for further briefing and hearing); *J.R.*, 2025 WL 1810210, at *4 (barring third country removal on expedited briefing schedule). In *Vaskanyan v. Janecka*, the petitioner filed his habeas petition on June 12, his TRO motion on June 17, and the government was given until June 20 to respond. No. 5:25-CV-01475-MRA-AS, 2025 WL 2014208, at *1–2 (C.D. Cal. June 25, 2025). The Court ordered only that he could not be removed to a third country without notice to Petitioner and his counsel and a meaningful opportunity to raise a claim for protection. *Id.* at *9.

The Court agrees that, before it may order Petitioner's release from custody, Respondents must be afforded sufficient time and opportunity to respond to his claims and provide the rebuttal evidence required by *Zadvydas*. Accordingly, the Court ordered the parties to meet and confer to determine an agreed briefing schedule for Petitioner's motion for preliminary injunction. Based

ORDER GRANTING IN PART AND DENYING IN PART TEMPORARY RESTRAINING ORDER - 17

on counsel's representations regarding their availability and the time needed to prepare, the Court will hold a preliminary injunction hearing the week of August 11.

### b) Third Country Removal

At the hearing, Dkt. 20, the government agreed not to oppose a temporary order barring Petitioner's removal to a third country pending the Court's ruling on a preliminary injunction motion. Accordingly, the Court will not elaborate on Petitioner's likelihood of success on the merits of his third-country removal claims beyond incorporating its ex parte order from July 25, 2025. *See* Dkt. 8.

### 2. Irreparable Harm

As the Court found in its initial order, the second *Winter* factor—irreparable harm—favors Petitioner. Dkt. 8 at 4. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (citation omitted). Further, the "Ninth Circuit has recognized 'irreparable harms imposed on anyone subject to immigration detention' including 'the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained.'" *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). In their declarations, Petitioner's family stated that he is an important caregiver for his daughter who suffers from a rare genetic disorder. Dkt. 2-13 ¶¶ 2, 4, 7–8; Dkt. 2-15 ¶¶ 2, 12–13. And it is beyond dispute that Petitioner would face irreparable harm from removal to a third country. *A.A.R.P. v. Trump*, 145

S. Ct. at 1364, 1367 (2025) (detainees with pending habeas petitions facing removal under Alien Enemies Act faced "an imminent threat of severe, irreparable harm").

   3. *Balance of Equities and the Public Interest*

The final two *Winter* factors, which involve balancing the equities and considering the public interest, merge when the Government is a party to a case. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citation omitted). These factors also favor Petitioner. In cases implicating removal, "there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). Though there is a countervailing "public interest in prompt execution of removal orders," *id.*, it is well-established that "our system does not permit agencies to act unlawfully even in pursuit of desirable ends," *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

## V. CONCLUSION

For these reasons, the Court GRANTS in part and DENIES in part the motion for a TRO, Dkt. 2-1. The Court ORDERS:

- Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf or in concert with them are RESTRAINED from removing Petitioner to a country other than Vietnam;
- Petitioner's request for immediate release from custody is DENIED;
- The Parties must submit a joint status report regarding the briefing schedule and proposed hearing date for a preliminary injunction by August 1, 2025.

This Order replaces the preliminary ex parte order issued on July 25, 2025. *See* Dkt. 8. This Order shall remain in effect until this Court issues a written order on Petitioner's

forthcoming preliminary injunction motion. Counsel for Respondents are directed to immediately provide notice of this Order to the restrained parties they represent. Counsel for Petitioner are directed to serve this Order on Respondent Bruce Scott.

Dated this 30th day of July, 2025.

Tiffany M. Cartwright
United States District Judge